UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BARBARA T.[1],                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )          CIVIL NO. 2:19cv345
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.      The claimant has not engaged in substantial gainful activity since May 12, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: diabetes mellitus; diabetic neuropathy; cervicalgia; obesity; bipolar disorder; depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl; no operation of foot controls bilaterally; frequently handle and finger bilaterally; limited to simple, routine tasks on a continuous basis, but no assembly line pace work; can tolerate occasional interaction with coworkers, supervisors, and the public; and limited to simple work related decisions, requiring few changes in the work setting.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1564 and 416.965).

7.      The claimant was born on January 26, 1957 and was 59 years old, which is defined as an individual of advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on March 2, 2020. On June 8, 2020 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on July 6, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

4

of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

The medical evidence shows that Plaintiff reported the following: feeling nervous/anxious; overwhelmed; panic attacks (AR 2445); sad or depressed; mood fluctuations (AR 2411; 2473); hallucinations, particularly with stress (AR 2407); memory problems; confusion/brain fog (AR 2466; 2561); stress (AR 2508; 2535); and frustration with her health. She had good and bad days. (AR 2552.) She cared for her father and her adult daughter, which caused stress. However, her daughter was able to socialize with friends, live on her own at times, interview for a job, and help Plaintiff financially. Not working helped keep Plaintiff's mood stable and reduced stress. (AR 2436; 2442.) During examinations, she was tearful (AR 2494), and depressed (AR 1085). She appeared calmer once she stopped working. (AR 2440.) She had only fair concentration. (AR 2434.) She had problems understanding proverbs, with memory, adding and subtracting, and could not do multiplication. (AR 1021-22.) She was acutely anxious during testing and was completely unable to concentrate. (AR 1022.) She had extreme difficulty with serial 7 testing, was "immobilized" by anxiety, and could not complete it. (*Id*.) She appeared anxious. (*Id*.) She isolated and did little with others outside her home.

Plaintiff's therapist consistently encouraged her to socialize more, join a club or activities at church, join a women's support group, and volunteer. Plaintiff did make some attempts to socialize including a family reunion and volunteering at her church. She was diagnosed with Bipolar Affective Disorder and prescribed Lithium and Cymbalta. Plaintiff reported insomnia. She felt tired, lethargic, little motivation, and malaise/fatigue. She looked tired and fell asleep during therapy (AR 2404; 2527.) She was diagnosed with low hemoglobin/anemia and had intravenous and oral iron. She was diagnosed with low platelets/thrombocytopenia. She had Vitamin D

5

deficiency and took supplements. She was also diagnosed with Hashimoto's disease and hypothyroidism, and prescribed Levothyroxine. Plaintiff was diagnosed with uncontrolled diabetes mellitus. She has tried multiple medications, including: Novolog; Glyburide (AR 547; 885); Glipizide; Metformin ER; Levemir (AR 1418); Lantus; Apidra; Tanzeum; and Basaglar (AR 2580); with various dosage adjustments. She frequently reported compliance with her diabetes medications and rarely was not taking them or took the incorrect dose. However, she has struggled to manage her diabetes. Plaintiff reported fluctuating glucose levels. She had levels as low as the 40s (AR 2008) and as high as 400s (AR 1745; 2581). Blood testing showed blood glucose levels ranging from 130 to 408 and Hemoglobin A1c levels ranging from 8.1 to 9.9. Plaintiff was also recommended to diet, exercise, and lose weight. She at times reported she was walking a few times a week, but at other times was not exercising. She was not sure what she was doing wrong (AR 2510) and was confused about what she was supposed to eat. She had a poor understanding of insulin medications, blood glucose, and food (AR 1496) and went to a dietician for education (AR 2524; 2541). She had numbness in her feet (AR 1016) and tingling (AR 2122; 2593). Examinations revealed reduced deep tendon reflexes (AR 1017) and an abnormal monofilament examination, bilaterally (AR 1970).

Plaintiff reported palpitations, particularly when walking. She had shortness of breath, particularly with exertion. She had occasional chest discomfort or pain. On February 2, 2017, a CT scan of her chest demonstrated: heterogenous ground-glass opacities in the middle and lower lungs; multiple subcentimeter pulmonary parenchymal nodules scattered in the lungs; discoid atelectatic change or scarring in the posterolateral aspect of the right middle lobe; and postinflammatory changes along the cardiac apex. (AR 1675.) In May 2018, chest x-rays

demonstrated minimal atelectasis in the left lung base. (AR 2625-27.) Plaintiff was diagnosed with hypertension, hyperlipidemia, and atypical chest pain (AR 2642), and prescribed Lipitor. She was diagnosed with shortness of breath and palpitations, possibly attributed to panic attacks. She has also been diagnosed with asthma, COPD, lung nodules, and ground glass opacities (AR 1674). She was prescribed Singulair, Breo (AR 1821), and Anoro (AR 2045; 2121). She has also reported swelling in her legs/edema and been diagnosed with lower extremity edema.

Plaintiff reported generalized myalgias (AR 1895); joint pain; back pain; and neck pain. A bone scan in October 2017 showed mild degenerative joint disease (AR 2158) and examinations revealed spasms in both upper trapezius (AR 2249; 2283). She was diagnosed with myalgias (AR 1888), cervicalgia with muscle spasms (AR 2239; 2280) and upper back pain (AR 2239), and prescribed Tizanidine (AR 2247; 2280). Plaintiff has a body mass index over 30, denoting obesity.

Plaintiff struggled with her many medical issues. She had a hard time staying well and was frustrated. (AR 2407.) She felt her medical issues were contributing to her mood issues. (AR 2463.) Her therapist consistently encouraged more physical activity. She indicated that more activity would help Plaintiff's health condition which, in turn, would help her mental condition.

On September 16, 2016, non-examining state agency physician, Dr. B. Whitley, opined Plaintiff could lift/carry 50 pounds occasionally, 25 pounds frequently, stand/walk up to 6 hours, and sitting up to 6 hours, in an 8-hour workday, and frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (AR 72; 83.) On December 7, 2016, another non-examining state agency physician, Dr. J. Sands, found the same limitations.

On September 19, 2016, non-examining state agency psychologist Dr. B. Johnson, opined Plaintiff's mental impairments caused mild difficulties performing activities of daily living and

maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. (AR 70; 81.) Plaintiff had moderate limits in her ability to maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Johnson limited Plaintiff to simple, unskilled tasks with light stresses, with limited demand, pressure, and complexity, and familiar tasks with limited work hassle and pace restrictions. Plaintiff could relate at least superficially. (AR 74; 85.) On December 8, 2016, non-examining state agency psychologist, Dr. D. Unversaw, found the same limitations.

On March 22, 2017, Plaintiff's primary care doctor, Dr. B. San Gabriel, completed a form to excuse Plaintiff from a loan her daughter took out. He indicated Plaintiff was unable to work, mainly due to Bipolar Disorder, which affects Plaintiff's ability to socialize, concentrate, and perform tasks, and that Plaintiff was also unable to lift heavy objects, due to back pain. (AR 1784.)

In May 2018, Plaintiff's therapist, Ms. Ruebensam, and psychiatrist, Dr. S. Parks, indicated Plaintiff suffered from Bipolar Affective Disorder and was prescribed Cymbalta and Lithium. (AR 2728.) They documented numerous signs and symptoms of Plaintiff's mental illness. (AR 2729.) They opined Plaintiff had no useful ability to function, or ability to meet competitive standards in numerous areas, including, but not limited to understanding, remembering, and carrying out very short, simple instructions; maintaining attention for two hour segments; performing at a consistent pace without an unreasonable number and length of rest periods; dealing with normal work stress; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; work in coordination or

8

proximity to others without being unduly distracted; getting along with co-workers or peers

without unduly distracting them or exhibiting behavioral extremes; interact appropriately with the

general public; maintain socially appropriate behavior; ask simple questions or request assistance;

accept instructions and respond appropriately to criticism from supervisors; respond appropriately

to changes in a routine work setting; and maintain regular attendance and punctual within

customary, usually strict, tolerances. (AR 2730-31.) Ms. Ruebensam and Dr. Parks indicated

Plaintiff had difficulty processing her thoughts and memory. Plaintiff's psychological condition

exacerbated her experience of her physical symptoms and her mental state could magnify the

intensity of her pain due to the impulsiveness and/or dysfunctional thought processes. (AR 2731.)

They noted various things which caused Plaintiff stress, including speed; precision; complexity;

deadlines; working within a schedule; decision-making; independent judgment; completing tasks;

working with people; dealing with supervisors; being criticized by supervisors; knowing her work

is being supervised; getting to work regularly; and fear of failure. (AR 2732.) They anticipated

Plaintiff's impairments and treatment would cause her to be absent from work more than four days

per month. (*Id.*)

     In support of remand, Plaintiff first argues that the ALJ's analysis of Plaintiff's treating

providers' opinions was legally insufficient and not supported by substantial evidence. Plaintiff's

treating psychiatrist, Dr. Parks, and therapist, Ms. Ruebensam, opined Plaintiff's impairments

caused numerous limitations. (AR 2728-32.) The ALJ gave those "little weight." (AR 26.) The

Regulations require controlling weight be given to  treating doctors' opinions if well supported by

accepted clinical and laboratory diagnostic techniques and not inconsistent with other substantial

evidence. 20 C.F.R. § 404.152775; SSR 96-2p. If controlling weight is not given, the ALJ must

consider multiple factors to decide the weight warranted. *Id.*; *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). No controlling weight can be given to opinions from sources who are not "acceptable medical sources," such as social workers or therapists. SSR 06-03p. However, those opinions are still evaluated using the factors listed in 20 C.F.R. § 404.1527 to determine the weight they are entitled. SSR 06-3p.

Plaintiff argues that the ALJ did not recognize that the opinions were also signed by Dr. Parks. The ALJ only acknowledged Plaintiff's therapist, Ms. Ruebensam. Thus Plaintiff contends that the ALJ's finding that the opinions were not offered by an acceptable medical source is factually incorrect. (AR 26.) Clearly, Dr. Parks, Plaintiff's treating psychiatrist, is an acceptable medical source. *Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016) ("But a finding of fact is clearly erroneous if it is 'based on errors of fact or logic.'"); *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (reversal may be required if the ALJ committed an error of law or based his decision on serious factual mistakes or omissions).

In the present case, the ALJ found that contemporaneous treatment notes did not support the disabling limitations included in the questionnaire. The ALJ specifically noted that Ms. Ruebensam documented that Plaintiff's mood had improved and she was regularly socializing with friends and family. (AR 26.) However, although Plaintiff was doing some socializing, it was sporadic. There were other times she was isolating, and even when Plaintiff did report socializing, Ms. Ruebensam consistently indicated Plaintiff should continue to work on it, join a women's support group, a club, or volunteer, for more socialization. Plaintiff argues that the ALJ was not permitted to point to evidence that might undermine a treating source's opinions, while ignoring related evidence that supported those opinions. *Moore*, 743 F.3d at 1123 ("[T]he ALJ may not

10

analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it."); *Scrogham*, 765 F.3d at 699 (ALJ's selective discussion of the record is an analytical error and requires reversal)*; Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (ALJ "must confront the evidence that does not support his conclusions and explain why it was rejected"). Further, the ALJ did not explain how some socialization undermined Ms. Ruebensam and Dr. Parks' opinions. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) and *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2000) (both indicating the ALJ must explain perceived inconsistencies). The ALJ did not point to any other inconsistencies between the treatment notes and opinions. Further, the ALJ did not consider that Ms. Ruebensam's treatment notes document that Plaintiff's mental impairments were affected by her physical impairments, and, that she and Dr. Parks opined Plaintiff's psychological condition exacerbates her experience of physical symptoms and her mental state can magnify the intensity of her pain due (AR 2731). The ALJ did not consider whether, when considering Plaintiff's mental and physical impairments, in combination, Dr. Ruebensam and Parks' opinions were supported by the record.

Plaintiff further argues that the ALJ's decision demonstrates no consideration of the relevant regulatory factors. The ALJ did not discuss that Ms. Ruebensam was Plaintiff's long-term treating therapist and was very familiar with Plaintiff's symptoms. 20 C.F.R. § 404.1527(c)(1)-(2). She did not acknowledge that Dr. Parks also signed the form, and, so, did not consider that Dr. Parks was a specialist, as a psychiatrist, who also had a long-standing treatment relationship with Plaintiff. 20 C.F.R. § 404.1527(c)(1)-(2) and (5). The ALJ did not recognize that the two providers had apparent similar views of Plaintiff's symptoms and limitations and co-signed the form. 20 C.F.R. § 404.1527(c)(4). Thus, Plaintiff concludes that the ALJ's failure to address the

relevant factors, and explain how those were weighed, renders the ALJ's analysis legally insufficient, and her decision to discount Ms. Ruebensam and Dr. Parks' opinions, not supported by substantial evidence. 20 C.F.R. § 404.1527; *Scrogham*, 765 F.3d at 697.

Defendant argues that although Plaintiff's treating psychiatrist co-signed the opinions that Plaintiff's therapist, Ms. Ruebensam, offered, "it is clear that it was Ms. Ruebensam who completed the [form] and it stretches the imagination that Dr. Parks would have made identical findings on the dozens of different factors on which Ms. Ruebensam opined." As such, Defendant argues that it was reasonable for the ALJ to view the form as only from the therapist, a non-acceptable medical source.

As Plaintiff notes, Defendant's argument is not brought up anywhere in the ALJ's decision. The ALJ does not even mention that Dr. Parks signed the opinions in question. It appears the ALJ did not even notice that as she merely indicated that the opinions were offered by Ms. Ruebensam. Defendant is not permitted to advance reasons to support the ALJ's conclusions that the ALJ did not indicate herself. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (collecting cases concerning *Chenery* violations indicating Defendant may not advance reasons to support the ALJ's decision which the ALJ did not advance themselves); *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). Further, Defendant's argument has no foundation in the record and is based purely on his speculation with no facts to support it. Plaintiff argues that it is entirely possible that Dr. Parks either completed or reviewed the completed form and signed it, indicating agreement with all of the opinions offered therein. Defendant's argument that it is clear Ms. Ruebensam completed the form and that it stretches the imagination that Dr. Parks would offer the same opinions, without any evidence supporting those statements, is not substantial

12

evidence to discount the opinions. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("…a decision based on speculation is not supported by substantial evidence."); *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (claimant was entitled to a decision based on the record rather than a "hunch").

   As Plaintiff points out, the fact that Dr. Parks signed the opinions undermines a key reason the ALJ posited for discounting those opinions. The ALJ's decision is not supported by substantial evidence when based on the mistaken belief the opinions were only signed by Ms. Ruebensam, who was not an acceptable medical source.  *Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016);  *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Had the ALJ recognized that the opinions were offered by both Dr. Parks and Ms. Ruebensam, she may have given those opinions controlling weight (an analysis she missed given her mistake). She may have given their opinions more weight as they were offered by psychiatrist and therapist, rendering them more supported and consistent. Clearly, The ALJ's error was not harmless.

   Defendant argues the ALJ found the limits offered were very extreme and not consistent with treatment notes.  He then outlines a few of the opinions included in the form, and notes that the ALJ found that evidence inconsistent with treatment notes documenting improvement in mood and regular socialization with friends and family. However, the ALJ did not point to any specific opinions offered in the form that was inconsistent with some improvements in mood and socializing at times. Defendant's pointing to specific opinions in the form as inconsistent was, again, analysis the ALJ did not provide. *Hanson*, 760 F.3d at 762. Further, Defendant does not explain how any of those opinions were inconsistent with improvement or some socialization. Improvement does not mean lack of symptoms and does not speak to the extent or limiting effect

of symptoms which remain. As such, improvement, without more, does not inherently undermine any of Dr. Parks' or Ms. Ruebensam's opinions. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("They key is not whether one has improved..., but whether [she] has improved enough to meet the legal criteria of not being classified as disabled."); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (responding to treatment does not mean able to work); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) (can be a great distance between responding to treatment and ability to work).

In addition, as Plaintiff notes, Plaintiff was only sporadically socializing, and at other times isolating, and then even when she socialized, Ms. Ruebensam recommended Plaintiff continue to work on that skill. Thus, the ALJ should have considered those limitations. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Plaintiff also argues that the ALJ failed to explain how some socialization or improvement, undermined the opinions. *Carradine*, 360 F.3d at 755; *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2000)) Defendant did not address either of those arguments and therefore has waived them. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose an argument permits inference of acquiescence/waiver); *see also, Dogan v. Astrue*, 751 F.Supp.2d 1029, 1042 (N.D. Ind., 2010) (collecting 7th Circuit district cases holding the Commissioner's failure to address one of a claimant's arguments amounts to waiver).

In her opening brief, Plaintiff argued that the ALJ failed to consider that Ms. Reubensam's treatment notes document that mental impairments were affected by Plaintiff's physical impairments and that Dr. Parks opined Plaintiff's psychological condition exacerbates her experience of her physical symptoms and that Plaintiff's mental state could magnify the intensity of

14

Plaintiff's pain. Plaintiff also argued that the ALJ's decision demonstrates no consideration of the required regulatory factors. Defendant did not address those arguments and waived them. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

This court finds that the ALJ's analysis of Plaintiff's treating providers' opinions was not supported by substantial evidence, and remand is required on this issue.

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ found Plaintiff had the mental RFC to perform simple, routine tasks, on a continuous basis, no assembly line pace work, only simple work related decisions, few changes in the work setting, and only occasional interaction with coworkers, supervisors, and the public. (AR 21.) The ALJ indicated she gave "great weight" to the state agency psychological consultants' opinions. (AR 25-26.) However, Plaintiff argues that the ALJ's assessed limitations are not consistent with those opinions on multiple points. For example, the state psychologists assessed the old "B criteria" and found Plaintiff had mild difficulties performing activities of daily living and maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. However, the ALJ assessed the new "B criteria" and found moderate limits in all four of the new areas, including understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (AR 20-21.) Plaintiff contends that since the "B criteria" had been changed since the state psychologists offered their opinions, the ALJ should have gotten an updated agency opinion or requested that a psychological expert attend the hearing to offer opinions based on the updated criteria. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).  Plaintiff argues that the ALJ impermissibly evaluated the "B criteria" on her own. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are

15

required to rely on expert opinions instead of determining the significance of particular medical findings themselves.")

The state agency psychologists limited Plaintiff to jobs with light stresses, limited demand, pressure, and complexity, familiar tasks, with limited work hassle and pace restrictions. They also found Plaintiff had moderate limits maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being unduly distracted by them, and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Plaintiff points out that the ALJ did not explain how those assessed limitations were incorporated into, or addressed, by the ALJ's RFC assessment, limiting Plaintiff to simple, routine tasks, with no assembly line pace work, simple work decisions, few changes in the work setting, and occasional interactions with others. When assessing a claimant's RFC, the ALJ is required to explain how the evidence she purported to rely upon led to the limitations assessed. SSR 96-8p ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) ...."); *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (ALJ must set forth a supportable record basis for the RFC); *Moore*, 743 F.3d at 1121 (the ALJ must build a logical bridge from the evidence to her conclusion to allow reviewers to trace her path of reasoning). Further, the ALJ did not explain how she incorporated the moderate limits the state agency psychologists found into her RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Since the ALJ gave the state agency consultant's opinions "great weight," she should have explained her decision to reject some of those opinions. *Myles v. Astrue*, 582 F.3d 672, 678 (7th

Cir. 2009) (an ALJ may not adopt portions of an opinion without explaining why he rejects portions) citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000); *see also*, SSR 17-2p; SSR 96-6p (indicating ALJ's cannot ignore state agency opinions and must explain the weight given to such opinions). For example, the state agency doctors found Plaintiff had moderate limits working in coordination with or proximity to others, without being unduly distracted by them. They concluded Plaintiff could manage superficial interactions with others. That is a limit to the quality or type of interactions with others, not the frequency. However, the ALJ's limit to "occasional" interactions limits the frequency (*i.e.* up to 1/3 of the workday (SSR 96-9p)), not the quality/type of interactions. The ALJ did not acknowledge the discrepancy or explain why she made the change, despite indicating she relied on those opinions. *Wartak v. Colvin*, 2016 WL 880945, *7 (N.D. Ind., 2016) (noting that there is a difference between "occasional" and "superficial"); *see also, Eveland v. Berryhill*, 2017 WL 3600387, *4-5 (N.D. Ind., 2017) (same).

When an ALJ finds moderate difficulties maintaining concentration, persistence, or pace, those difficulties must be included in the questions posed to the vocational expert and the RFC assessment. *Varga,* 794 F.3d at 814; *Yurt*, 758 F.3d at 859; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-20 (7th Cir. 2010). There are no specific terms which must be used, but those used must capture the claimants' "temperamental deficiencies and limitations." *O'Connor-Spinner, supra; see also, Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (rejecting argument that limits to simple, routine tasks and limited interactions with others, adequately accounts for temperamental deficits in concentration, persistence, or pace); *Yurt, supra; Varga, supra*; SSR 85-15.

In the present case, the ALJ found Plaintiff had moderate limitations regarding concentrating, persisting, or maintaining pace, then concluded Plaintiff could perform simple,

routine tasks, with simple work-related decisions, few changes in the work setting, no assembly line pace work, and only occasional interactions with others. (AR 21.) However, the ALJ did not explain how she moved from the evidence to her RFC limits (which echoed the limits in her hypothetical questions). The ALJ made no finding that Plaintiff's particular difficulties with concentration, persistence, or maintaining pace had to do with the complexity of the task, the routineness, the work-related decisions required, how many changes in the work setting, or whether the pace of the work was at an assembly line level. Without those findings, there is no logical bridge from the evidence to the limits assessed. *Moore*, 743 F.3d at 1121. Thus, Plaintiff concludes that the ALJ's failure to explain how she arrived at the limits assessed warrants remand. *Briscoe ex. rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to explain how he arrived at his RFC under SSR 96-8p was "…in itself is sufficient to warrant reversal of the ALJ's decision").

As noted, the evidence indicates Plaintiff was stressed and had difficulty managing her stressors, including caring for her father, driving her daughter, and managing her medical conditions. She was less stressed once she stopped working. (AR 2442.) Plaintiff's treating therapist and psychiatrist opined Plaintiff had no useful ability to deal with normal work stress. (AR 2730.) The state agency psychologists opined Plaintiff could handle a job with "light stressors." The ALJ did not discuss Plaintiff's stress, what caused it, or how her RFC accommodated that. The ALJ was not permitted to ignore that entire line of evidence. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)(ALJ not permitted to ignore an entire line of evidence) Thus Plaintiff argues that the ALJ's failure to address Plaintiff's stress and accommodate that limitation renders her RFC assessment not supported by substantial evidence.

The evidence indicates Plaintiff had difficulty managing her medical issues, particularly diabetes, which frustrated and overwhelmed her. She felt her medical issues contributed to her mood. (AR 2463.) Plaintiff's therapist frequently recommended physical activity, to help with Plaintiff's physical and emotional health. Plaintiff's therapist and psychiatrist opined Plaintiff's psychological condition exacerbates her experience of her physical symptoms and her mental state can magnify the intensity of her pain due to the impulsiveness and/or dysfunctional thought processes. (AR 2731.) The ALJ must consider the combined impact of mental and physical impairments. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) (ALJ must consider "interaction" between physical and mental problems and that even if "each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling."). The ALJ did not discuss the combined impact of mental and physical impairments.

Similarly, Plaintiff is obese, with a BMI greater than 30. The ALJ is required to consider the combined effect of obesity with Plaintiff's other impairments when determining RFC. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[U]nder S.S.R. 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and has arthritis may experience greater limitations than a person who is only arthritic."); SSR 02-1p. The ALJ acknowledged Plaintiff's obesity and found obesity combined with other conditions, supported a limit to medium work. (AR 24.) However, she did not explain what evidence supported a limit to medium work, but no further. *Parker v. Colvin*, 2016 WL 4435622, *4 (N.D. Ind., 2016) (remanding where ALJ made a single statement that she considered obesity with other impairments, but, did not build a logical bridge from that statement and the conclusion

to limit the claimant to light work). Plaintiff reported pain in her neck and back. A bone scan showed mild degenerative joint disease.(AR 2158.) She was diagnosed with cervicalgia and upper back pain. (AR 2239; 2280.) She had numbness and tingling in her feet. She had leg swelling. She was diagnosed with edema. (AR 1776; 1783.) She had chest discomfort, palpitations, and shortness of breath with exertion and walking. Imaging showed ground glass opacities and nodules in her lungs. (AR 1675.) She was diagnosed with asthma, COPD, lung nodules, and ground glass opacities. She was also diagnosed with shortness of breath and palpitations. The ALJ did not explain how she concluded that Plaintiff could stand/walk up to 6 hours in an 8-hour workday, and lift 50 pounds occasionally, and 25 pounds frequently (*i.e.* medium work), despite the combined effects of her back and neck impairments, leg edema and diabetic neuropathy, and breathing impairments with obesity. Back impairments, with obesity, can make standing and/or walking more difficult. *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2000) (ALJ decision failed to analyze how, given obesity with arthritic knees, the claimant could be on her feet for a sufficient period of time to perform light work).

Obesity can exacerbate respiratory problems by causing the respiratory system to work harder to pump oxygen. SSR 02-1p. The ALJ did not discuss how COPD, asthma, and obesity, together, impacted Plaintiff's function and ability to perform medium work. *Epting v. Colvin*, 2016 WL 1237888, *7 (N.D. Ind. 2016) (remand where ALJ failed to consider combined impact of obesity and COPD).

Plaintiff reported malaise/fatigue. She felt lethargic and lacked energy. She was tired. The ALJ noted Plaintiff's reported fatigue but found examinations unremarkable, and noted that Plaintiff had normal range of motion, breath sounds, and heart rate. (AR 23.) Plaintiff argues that

the ALJ was incorrect that examinations were unremarkable. Based on laboratory blood work, Plaintiff was diagnosed with: low hemoglobin/anemia; low platelets/thrombocytopenia; Vitamin D Deficiency, Hashimoto's disease; and hypothyroidism. She was prescribed intravenous and oral iron intravenous infusions; Vitamin D; LT4 (AR 2322); and Levothyroxine. Plaintiff maintains that those conditions can cause fatigue, tiredness, weakness, and shortness of breath. Plaintiff contends that the ALJ's failure to recognize that objective testing led to those conditions and that those conditions can cause and were the attributed causes of Plaintiff's fatigue and related symptoms, renders the ALJ's decision not supported by substantial evidence. *Pyles*, 829 F.3d at 868; *Beardsley*, 758 F.3d at 837. Plaintiff argues that the ALJ's reliance on normal range of motion, breath sounds, and heart rate, to discount Plaintiff's fatigue, lacks any logical connection. The ALJ pointed to no evidence those findings had in relation to fatigue or the diagnosed conditions. The ALJ must build a logical bridge from the evidence to her conclusions. *Moore*, 743 F.3d at 1121 (ALJ must build a logical analytical bridge). If Plaintiff's fatigue was so severe that she had to lay down during the workday, that could significantly impact Plaintiff's ability to sustain full-time, competitive work. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (no employer likely to hire one who must stop working and lie down two or three times a day for an hour at a time).

Defendant has not specifically responded to any of Plaintiff's arguments regarding the errors in the ALJ's analysis of Plaintiff's RFC. Defendant merely summarizes the ALJ findings and concludes that the ALJ's RFC is supported by substantial evidence. This court finds Plaintiff's arguments to be well-taken and that remand is warranted on the issues raised by Plaintiff regarding the RFC.

Next, Plaintiff argues that the ALJ's analysis of Plaintiff's subjective symptoms was legally

insufficient. The ALJ found Plaintiff's statements about her symptoms and limitations "not entirely consistent" with other evidence in the record. (AR 22.) Plaintiff argues that the ALJ incorrectly believed statements could only be accepted if "entirely consistent" with the evidence. That is a legal error. Plaintiff's statements need not be "entirely consistent" with all evidence to be given weight. The ALJ must apply a preponderance standard (more likely than not), not clear and convincing, or beyond a reasonable doubt, standard of review. *See* HALLEX I-3-3-4; 20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a). Courts in this District have found an inappropriate application of a more stringent standard than required by the Regulations, when the ALJ found statements "not entirely consistent" with other evidence. *John P. v. Saul*, 2019 WL 4072118, *11 (N.D. Ind. 2019); *Murphy v. Berryhill*, 2019 WL 1123511, *15 (N.D. Ind. 2019); *Justin H. v. Berryhill*, 2019 WL 2417423, *12-13 (N.D. Ind. 2019. Also, finding statements "not entirely" consistent implies the ALJ found some statements consistent, without indicating which, or to what extent. SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent..."). That renders meaningful judicial review impossible. *Martinez*, 630 F.3d at 694-95; *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010). Any limits credited should be included in the RFC assessment, however, since it is not clear which were credited, it is impossible to review the RFC. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014); see also, *DeJohnette v. Barnhart*, 2018 WL 521589, *5 (N.D. Ill., 2018) ("not entirely consistent" finding does not inform, in a reviewable way, the specific evidence the ALJ considered to reach her conclusion).

The ALJ indicated Plaintiff had stopped taking her insulin, did not bring her meter to appointments, and failed to pick up Metformin and glucose testing strips from the pharmacy. (AR 23.) However, the record as a whole shows some appointments Plaintiff forgot to bring her meter,

22

forgot to take insulin on occasions, or did not correctly adjust dosages or change medications as directed, but other times Plaintiff was checking her blood glucose levels at home, taking medications as directed, and brought in her recent glucose readings. Plaintiff argues that the ALJ was not permitted to pluck a few pages from a record that was over 2700 pages, to discount Plaintiff's statements. *Zurawsk*i, 245 F.3d at 887; *Moore*, 743 F.3d at 1123; *Scrogham*, 765 F.3d at 699; *Indoranto,* 374 F.3d at 474. Plaintiff notes that the evidence indicates Plaintiff did not take insulin at times because she thought it was not necessary due to her blood glucose level dropping in to the hypoglycemic range. (AR 540.)  Another time her insurance did not cover medication. (AR 1418.)

Before discounting Plaintiff's reported symptoms for any lack of compliance, the ALJ was required to consider the reasons for that. SSR 16-3p ("…we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ should not draw any inferences from lack of follow through on treatment unless she first explores the explanations the claimant gives). Plaintiff's perception that the insulin was not necessary when her blood glucose levels were low, and her inability to afford medications, are reasonable explanations for lapses in taking her medications. SSR 16-3p (ALJ should consider and address reasons given, that a claimant may not have undergone treatment, which may include that a claimant may not understand appropriate treatment or the need for consistent treatment, and may include that they could not afford treatment). Plaintiff points out that there is a short period of time where Plaintiff appeared to have had mis-communications with the pharmacy and did not get some medications and testing strips. Plaintiff again contends that the ALJ was impermissibly selective when discussing the record and did not consider Plaintiff's explanations. *Scrogham*, 765

F.3d at 699; *Indoranto*, 374 F.3d at 474; *Craft, supra*.

The ALJ found Plaintiff was not compliant with recommended treatment, because Plaintiff was not using her at-home stationary bike to exercise. The ALJ found Plaintiff failed to comply with recommended treatment. (AR 23.) However, recommendations that a claimant lose weight or exercise is not "prescribed treatment." SSR 02-1p ("The treatment must be prescribed by a treating source…not simply recommended. A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."); *see also*, SSR 18-3p ("Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation."). In addition, the stationary bike was not specifically recommended. Plaintiff was only told to increase her activity and exercise. Plaintiff indicated she was walking a few days a week.

Plaintiff argues that the ALJ was not permitted to rely on Plaintiff not following recommendations to exercise, by noting she was not riding her stationary bike, but ignore evidence Plaintiff was walking. *Scrogham*,765 F.3d at 699 (ALJ's selective discussion of the record is an analytical error and requires reversal); *Indoranto*, 374 F.3d at 474 (ALJ "must confront the evidence that does not support his conclusions and explain why it was rejected"). The ALJ, later, acknowledged Plaintiff was walking, to undermine Plaintiff's reports of neuropathy in her feet. (AR 23.) It is inconsistent for the ALJ to both discount Plaintiff's statements because she was not following recommendations that she exercise, and to discount Plaintiff's statements about neuropathy because Plaintiff walked for exercise. *Parker*, 597 F.3d at 924 (ALJ erred failing to reconcile two inconsistent findings); *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996) (remand required when ALJ makes inconsistent findings). Further, the ALJ pointed to no evidence

suggesting walking undermined reports of neuropathic pain. Plaintiff argues that the ALJ was not permitted to make that independent medical evaluation. *Moon*, 763 F.3d at 722.  Plaintiff also notes that there is no evidence about how far Plaintiff walked or for how long and, thus, there is no logical bridge between Plaintiff's walking a few times a week and the ALJ's decision to discount reported difficulty walking for extended periods of time. *Carradine*, 360 F.3d at 755 (ALJ failed to consider the difference between walking, for exercise, and being able to work 8 hours per day, 5 days per week).

The ALJ found Plaintiff's Hemoglobin A1c had improved and indicated that was likely due to recent compliance with diet and exercise. However, the evidence suggests Plaintiff's Hemoglobin A1c fluctuated. It was 9.9 from May 2016 through January 2017, then dropped (improved) to 8.4 in May 2017 (AR 1934), then went back up to 8.7 in September 2017 (AR 2082), dropped to 8.1 in January 2018 (AR 2285; 2321), before it went back up to 9.1 in May 2018 (AR 2584). Plaintiff argues that even if Plaintiff's A1c had improved, it was well above 7, which is the target for someone with diabetes mellitus. As such, any improvement does not undermine Plaintiff's reported ongoing symptoms and/or limitations due to diabetes. *Murphy*, 759 F.3d at 819 ("They key is not whether one has improved…, but whether [she] has improved enough to meet the legal criteria of not being classified as disabled."); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (responding to treatment does not mean able to work); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) (can be a great distance between responding to treatment and ability to work).

Plaintiff further points out that the ALJ did not cite to evidence that any improvement in A1c corresponded to Plaintiff eating better and/or exercising and, thus, the ALJ's conclusion was

merely speculation and does not constitute substantial evidence supporting the ALJ's decision. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("…a decision based on speculation is not supported by substantial evidence."); *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (claimant was entitled to a decision based on the record rather than a "hunch"). Plaintiff also notes that a review of the evidence documents that Plaintiff's A1c went up between May 2017 and September 2017, despite reports that she was walking. Her A1c improved from 8.7 to 8.1 between September 2017 and January 2018, despite not walking, eating things like a cinnamon roll and cereal, and snacking between meals. (AR 2317.). Thus, Plaintiff concludes that the evidence contradicts the ALJ's conclusion.

Similarly, the ALJ found Plaintiff's mental health symptoms abated with therapy and medication adjustments. (AR 24.) However, again, the ALJ pointed to no evidence of that. Instead, the record documents fluctuations. At times Plaintiff was feeling better, less depressed, less stressed, and socialized more and at times she was doing worse, with increased depression, more stress, and isolating more. Such fluctuations are typical for those with chronic mental illness, particularly bipolar disorder, and do not demonstrate any sustained improvement. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic illness, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (ALJ erred by pointing to a single treatment note from the treating physician because "a person who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *see also*, SSR 16-3p. Further, even where Plaintiff's symptoms did improve, for a time, she continued to demonstrate ongoing symptoms and limitations, and as such,

26

improvement, alone, does not undermine any of Plaintiff's reports. *Murphy*, 759 F.3d at 819; Meuser, 838 F.3d at 913; *Scott*, 647 F.3d at 739-40.

The ALJ indicated that Plaintiff was cooperative with her doctors/providers and attended appointments. (AR 25.) Plaintiff argues that it is not clear if the ALJ discounted Plaintiff's statements for those reasons but, to the extent she did, that was in error. Plaintiff first contends that the ALJ should not have discounted Plaintiff's statements based on compliance with her treatment particularly where the ALJ, elsewhere, was quick to point out any small deviation from recommendations by providers. That Plaintiff was attending appointments and cooperating with providers attests to Plaintiff's wish to receive treatment and improve her condition, and is not a reason to question Plaintiff's reports. Plaintiff also contends that the ALJ did not explain how attending a few appointments a month, for treatment, undermined any of Plaintiff's reported symptoms and limitations. *Carradine*, 360 F.3d at 755; *Zurawski*, 245 F.3d at 887-88 (ALJ must explain perceived inconsistencies).

The ALJ noted Plaintiff was not hospitalized for her psychological conditions after 2016. (AR 25.) However, that only means Plaintiff could manage her basic needs, and was not a danger to herself or others. *Voigt v. Astrue*, 781 F.3d 871, 876 (7th Cir. 2015) ("The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves …"). There is much distance between functioning well enough to avoid hospitalization, and being able to work. *Punzio*, 630 F.3d at 712 ("Concluding that the claimant 'is not a raving maniac who need to be locked up' is a far cry from concluding that she suffers no limits on her ability to function."); quoting *Bauer*, 532 F.3d at 608.

The ALJ indicated Plaintiff had requested her doctor to complete disability paperwork, not because she was unable to work, but because she wanted to be excused from a student loan she cosigned for her daughter. (AR 23.) However, Plaintiff did not say she was not disabled and neither did the doctor. Plaintiff asked her doctor to complete a disability form so she could be excused from the cosigned loan. The note indicates Plaintiff is unable to work primarily due to Bipolar disorder, which affects her ability to socialize, concentrate, and perform tasks, and Plaintiff is unable to lift heavy things due to back pain. (AR 1784.) Plaintiff argues that she requested a benefit she was legally permitted to apply for and that fact cannot be used to discredit her reported inability to work. It was precisely because Plaintiff was disabled that she was able to request a release from that loan.

The ALJ found that Plaintiff was able to perform activities of daily living such as cook, manage personal care, clean, and do laundry, and concluded Plaintiff was not as limited as expected given the allegations about her limitations and symptoms. (AR 25.) However, the ability to perform simple activities, throughout the day, at Plaintiff's own pace, and without being held to any minimum standard of performance, is not comparable to full-time, competitive work. *Bjornson*, 671 F.3d at 647 (minimal daily activities are not inconsistent with reported inability to sustain full-time work because, among other reasons, the individual can perform activities at their own pace, punctuated by rest, and without any minimum standard of performance); *see also, Punzio*, 630 F.3d at 712. Thus Plaintiff argues that the ability to perform those activities does not undermine Plaintiff's reported inability to sustain full-time work activity. Plaintiff points out that the ALJ did not cite to any inconsistencies between those activities and the limits Plaintiff alleged. Plaintiff contends that without pointing to any specific perceived inconsistencies, the ALJ's

conclusion is not supported by substantial evidence. *Carradine*, 360 F.3d at 755; *Zurawski*, 245 F.3d at 887-88.

Similarly, the ALJ noted that Plaintiff cares for her father and special needs daughter. (AR 25.) However, there is little to no evidence about what Plaintiff did for either and the ALJ made no findings of fact about that. Without any evidence of activities involved in caring for Plaintiff's family members, the ALJ's conclusion that care was inconsistent with Plaintiff's reported symptoms and limitations was not supported by substantial evidence. A review of the evidence seems to indicate she was not doing very much for her daughter. She drove her daughter to appointments and she sometimes picked her up when she fell, although her daughter had not fallen since 2016. Notes indicate the daughter had lived alone, went out with friends, and was applying for a job. Thus, it appears Plaintiff was not "caring" for her daughter a significant amount. There is no evidence about what she was doing for her father. Plaintiff argues that even if Plaintiff was caring for her father and/or daughter, the Seventh Circuit has cautioned against discounting a claimant's reports based on care for a family member because they may have no choice. *Beardsley*, 758 F.3d at 838 ("…we have urged caution in equating [daily] activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member."); *see also, Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (caution discounting a claimants' statements based on care of a family member because they may have no other choice).

The ALJ indicated that although Plaintiff alleged social isolation, she also reported she could go to public places, without problems. (AR 25.) However, isolating, and avoiding leaving her house or socializing, at times, is a separate issue than being around others when she does go out. Nothing in the record indicates that at those times where Plaintiff was able to leave the house,

she had problem socializing. The problem was Plaintiff's difficulties leaving home, at times. The

ALJ also indicated that although Plaintiff said she could stand only 20 minutes at one time, she

volunteered for church events, serving refreshments and desserts, and stood more than two hours

at one time. (AR 25.) However, Plaintiff testified that standing hurt her back and she was in a lot

of pain. She said that after one of the weekend volunteering she had to lay down and care for her

back for a couple of days. Plaintiff contends that the ALJ was not permitted to ignore those

qualifying statements about Plaintiff's difficulties standing when volunteering. *Scrogham*, 765 F.3d

at 699 (ALJ may not consider a claimant's activities selectively, ignoring qualifying evidence that

contradicts the finding that the claimant can perform such activities). In addition, Plaintiff also

notes that she volunteered for a couple of weekends a year. (AR 49.) Which is not comparable to

standing/walking 6 hours in an 8-hour workday and does not undermine Plaintiff's report that she

would not be able to sustain that activity on a full-time basis.

Again, Defendant has not specifically responded to Plaintiff's arguments regarding the

alleged errors in the ALJ's analysis of Plaintiff's subjective symptoms.  This Court finds that

remand is warranted on the issues raised by Plaintiff regarding the ALJ's analysis of Plaintiff's

subjective symptoms.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: July 10, 2020.

s/ William C.  Lee      
William C. Lee, Judge
United States District Court
